## COMMONWEALTH *vs.* MARY KENNEDY.

Upon evidence of repeated sales of intoxicating liquors by a woman in her house, and of her delivering such liquors there to persons who drank them on the premises, the question whether she kept the house for the sale and keeping of intoxicating liquors is for the jury.

In a criminal prosecution for selling intoxicating liquors, or keeping a tenement for their sale, in which the defendant relies for his justification upon a right to sell malt liquors under the Sts. of 1870, *cc.* 389, 390, the burden is on him to prove that the town or city had not voted to prohibit the sale of such liquors therein.

INDICTMENT on the Gen. Sts. *c.* 87, §§ 6, 7, for keeping and maintaining at Attleborough on January 1, 1871, and divers other days and times between that day and June 14, 1871, a tenement used for the illegal sale and illegal keeping of intoxicating liquors.

At the trial in the superior court, before *Wilkinson,* J., the material evidence for the Commonwealth was given by Charles J. White and James W. Riley. White testified " that he had known the defendant for twelve years ; that he had bought intoxicating liquors of her in her house at Blaneyville in Attleborough a number of times, and paid ten cents for it each time ; that about June 1, 1871, was the last time ; that he had not seen intoxicating liquors sold to others, but had seen others drinking there ; that he had seen all there were in the house drinking there, seven or eight ; and that the defendant was turning it out." Riley testified that he was a deputy of the sheriff of Bristol ; " that he knew where the defendant lived at North Attleborough, and thought she moved there in April ; that he had been there two or three times, in the house ; that she had charge of the house, cooking there, and had a good many boarders ; and that he had not seen anybody drink in the house, but had seen persons coming from there drunk."

The defendant first requested, and the judge refused, a ruling that the evidence was insufficient to warrant a verdict of guilty. She then requested rulings " that the gist of the offence is the keeping and maintaining of a tenement for the illegal purpose mentioned ; that evidence of sales of intoxicating liquors by the

defendant in a tenement is not of itself sufficient to convict, **but** there must be some evidence of acts or admissions on her part, showing that she had the care and control of it in the sense of being proprietor or keeper thereof; that it is not enough that others call the tenement her house, but it must also be proved that it was a house she kept and maintained in the sense of proprietor or keepership; and that it is not enough to show that she had charge of the house, unless it appears by the evidence that she had charge thereof in the sense of keeping or maintaining it." And the judge thereupon instructed the jury "that the rulings asked were correct, with this addition, that proof of sales of intoxicating liquor in the tenement by the defendant would tend to show that she kept or maintained it." The jury returned a verdict of guilty, and the defendant alleged exceptions.

*J. Brown*, for the defendant. 1. The evidence failed to identify the tenement in Blaneyville, about which White testified, with the tenement in North Attleborough, testified of by Riley. Riley testified to the keeping of a tenement by the defendant, but not to her selling or keeping for sale any liquor therein. White testified to sales of liquor by the defendant in a tenement, but not to her keeping of the tenement in any sense within the statute on which the indictment is founded. His testimony is entirely consistent with the fact of some other person than the defendant being the sole owner and proprietor of the tenement in Blaneyville. Such being the state of the testimony, the judge's instruction, "that proof of sales of intoxicating liquor in the tenement by the defendant would tend to show that she kept or maintained it," was erroneous, either in assuming the identity of the two tenements, or, if applied only to the tenement in Blaneyville, in inducing the jury to find the fact of keeping from the evidence of the sales alone.

2. The evidence was insufficient in failing to show that the intoxicating liquor which the defendant sold was such as she was prohibited to sell. *Commonwealth* v. *Livermore*, 2 Allen, 292, and 4 Allen, 434. Ale, porter, strong beer and lager beer were declared intoxicating liquors by the St. of 1869, *c.* 415, § 30. But during the time covered by this indictment any person might

sell them or keep them for sale. St. 1870, *c.* 389, § 2. No license, appointment or authority was needful for the purpose; and therefore the St. of 1864, *c.* 121, did not apply, and the burden was on the Commonwealth to show that the defendant sold or kept for sale other than malt liquor.

*C. Allen*, Attorney General, for the Commonwealth.

GRAY, J. That the evidence introduced at the trial was sufficient to prove that the defendant kept or maintained a tenement used for the sale and keeping of intoxicating liquors is too plain to be discussed. *Commonwealth* v. *Taylor*, 14 Gray, 26.

It is argued that the liquors which were kept and sold on the premises may have been ale, porter, strong beer or lager beer; and that the burden of proving that such liquors could not be lawfully sold in Attleborough was upon the Commonwealth.

By the St. of 1869, *c.* 415, as amended by the Sts. of 1870, *cc.* 389, 390, sales of ale, porter, strong beer or lager beer may be made in any city or town which does not vote that they shall not be allowed; but are unlawful and punishable as sales of intoxicating liquors in any city or town which does so vote. *Commonwealth* v. *Bennett, ante,* 27.

The St. of 1864, *c.* 121, § 1, declares that "in all criminal prosecutions in which the defendant relies for his justification upon any license, appointment or authority, he shall prove the same; and until such proof the presumption shall be that he is not authorized." The rule of evidence established by this statute is not limited to cases of a written license, appointment or certificate of authority; but extends to all cases in which the law either expressly permits, or by restricting a general prohibition, which would otherwise include the case, allows the act to be done under certain circumstances. The words "license, appointment or authority," in this statute, as in indictments for offences of this class, comprehend cases in which the statutes declare that persons of a certain occupation, such as druggists or officers of the law, may sell, or that the prohibition of the statute shall not apply to imported liquors in the original packages, or to cider sold for other purpose than as a beverage, or to the fruit of the vine for the commemoration of the Lord's Supper, or to native wines not

to be drunk on the premises. *Commonwealth* v. *Carpenter*, 100 Mass. 204. *Commonwealth* v. *Lafontaine*, 3 Gray, 479. *Commonwealth* v. *Clapp*, 5 Gray, 97. *Commonwealth* v. *Conant*, 6 Gray, 482. *Commonwealth* v. *Purtle*, 11 Gray, 78. *Commonwealth* v. *Chisholm*, 103 Mass. 213. *Commonwealth* v. *Lynn*, 107 Mass. 214.

That rule governs this case. As sales of ale, porter, strong beer and lager beer in Attleborough were punishable as unlawful sales of intoxicating liquors, if the town had voted that they should not be allowed, and were authorized if not so prohibited, the burden of proving that they were authorized was upon the defendant. *Exceptions overruled.*